1 | Robert C. Niesley, Bar No. 131373
rniesley@watttieder.com
2 | Amanda L. Marutzky, Bar No. 274376
amarutzky@watttieder.com
3 | Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
2040 Main Street, Suite 300
4 | Irvine, CA  92614
Telephone:  949-852-6700
5 | Facsimile:   949-261-0771

6 | Attorneys for Plaintiff
ALLIED WORLD INSURANCE COMPANY

7

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10 | **SACRAMENTO DIVISION**

11

12 | ALLIED WORLD INSURANCE COMPANY, a Delaware corporation,

Case No.

13 | Plaintiff,

14 | v.

**COMPLAINT FOR:**

15 | TEC CONSTRUCTION SERVICES, INC., a California corporation, THE ETERNITY CHALLENGE, INC., a California corporation, MERLYN F. LUND, an individual, NANCY T. LUND, an individual,

**(1)  Breach of Contract (Indemnity Agreement);**

16 | **(2)  Declaratory Relief;**

17 | **(3)  Quia Timet; and**

18 | **(4)  Specific Performance.**

Defendants.

19

20

21

22 | Plaintiff Allied World Insurance Company ("Allied World" or "Surety")

23 | hereby alleges as follows:

24 | **JURISDICTION AND VENUE**

25 | 1.    This Court has jurisdiction over this civil action.   This court has

26 | original jurisdiction under 28 U.S.C. § 1332, in that this action is a civil action

27 | between citizens of different states in which the matter in controversy exceeds,

28 | exclusive of costs and interest, seventy-five thousand ($75,000.00) dollars.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

10336558.1 103902.00002 | 1 | **COMPLAINT**

2.     Venue is proper in this judicial district because the individual Defendants reside in Placer County, and Defendants TEC Construction Services, Inc. and The Eternity Challenge, Inc.'s principal places of business are in Placer County.   Additionally, all of the Defendants are subject to jurisdiction in the Eastern District of California.

## GENERAL ALLEGATIONS

3.     Allied World is, and at all relevant times herein was, a corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business in Boston, Massachusetts.   "[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate activities." Hertz Corp. v. Friend, 130 S. Ct. 1181, 1186 (2010).   Typically, the principal place of business or "nerve center" will be the corporation's headquarters. Id.  Based on the following facts, Allied World's principal place of business, or its "nerve center," is in Boston, Massachusetts:

a.     Allied World's headquarters are located in Boston, Massachusetts.

b.     The Boston, Massachusetts office is the main administrative office for Allied World and contains the substantial predominance of Allied World's corporate operations.

c.     The Boston, Massachusetts office is where the majority of Allied World's executive and administrative functions are performed.

d.     Allied World's Boston, Massachusetts office is the primary office of Allied World's Chief Executive Officer.

e.     All ultimate decisions regarding Allied World's business strategies, management of corporate assets and finances, and corporate governance are made in Boston, Massachusetts.

4.     At all relevant times, Allied World was duly licensed to conduct business in the State of California.  Allied World is an admitted surety insurer in the

State of California, among other jurisdictions, and issues contract surety bonds, among other bonds, and lines of insurance in the course of its business.

5.      Surety is informed, believes and thereon alleges that Defendant TEC Construction Services, Inc. ("TEC" or "Principal") is a corporation duly organized and existing under the laws of the State of California, with a principal place of business in Rocklin, California.

6.      Surety is informed, believes and thereon alleges that Defendant The Eternity Challenge, Inc. ("Eternity") is a corporation duly organized and existing under the laws of the State of California, with a principal place of business in Rocklin, California.

7.      Surety is informed, believes and thereon alleges that Defendant Merlyn F. Lund is an individual residing in the State of California, and is subject to the jurisdiction and laws thereof.

8.      Surety is informed, believes and thereon alleges that Defendant Nancy T. Lund is an individual residing in the State of California, and is subject to the jurisdiction and laws thereof.

9.      Collectively, Defendants TEC, Eternity, Merlyn F. Lund and Nancy T. Lund are referred to herein as "Indemnitors" or "Defendants".

10.     On or about December 21, 2015, Principal and Indemnitors, and each of them, executed a General Indemnity Agreement ("GIA") in favor of Surety. Attached hereto as **Exhibit A** is a true and correct copy of the GIA, which is incorporated by reference herein.

11.     Under Paragraph 3.2 of the GIA, Indemnitors are jointly and severally obligated to indemnify Surety from any and all loss and expense incurred in connection with Surety's issuance of any bonds on behalf of TEC.  The GIA states, in relevant part:

///

///

3.2   INDEMNITY – at all times jointly and severally to exonerate, indemnify and keep indemnified, and to defend and to hold Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay Surety for all Losses specified or otherwise described in Surety's notice . . .

I.   Certain Definitions . . .

"Loss" means the underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees (including all legal fees and disbursements), interest and expenses of every nature (including premium and fees due-but-unpaid for the issuance and continuance of the Bonds) which Surety sustains or incurs or becomes liable for by reason of (a) being requested to execute or procure the execution of any Bond; or (b) having executed or procured the execution of any Bond; or (c) the administration of any amendment, waiver or supplement to any Bond; or (d) any Indemnitor's failure to perform or comply with any of the covenants and conditions of this Agreement; or (e) enforcement of, attempted enforcement of, or preservation of rights under any Bond or this Agreement.

12.   In addition to Defendants' indemnity obligations, the Defendants also agreed to deposit collateral with Surety upon Surety's demand in an amount sufficient to cover any exposure that Surety believes it may have.  The GIA states:

Each Indemnitor hereby agrees and covenants with Surety as follows: …

3.3   DEPOSIT OF FUNDS – (a) to deposit with Surety upon demand as collateral, by the Due Date and after receipt of Surety's written demand an amount determined solely by Surety to exonerate Surety from Loss and to cover its exposure and/or liability for Loss covered by Section 3.2, as determined solely by Surety. At Surety's sole option, such collateral will be in addition to and not in lieu of any other collateral previously provided to Surety. In addition, if an Event of Default (as defined in this Agreement below) has occurred, Surety will be entitled to demand that Indemnitors place with Surety funds equal to the aggregate penal sum of all then- outstanding Bonds, or such sum as determined by Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds).

13.   Pursuant to the request of Indemnitors, and in reliance upon the terms and execution of the GIA, Surety issued a performance bond and labor and material payment bond to TEC in connection with its construction work on the Howard Johnson Remodel Howard Johnson Inn & Suites project (the "Project"). A true and accurate copy of each bond (the "Bonds") is attached hereto as **Exhibit B**:

14. Subsequent to the issuance of the Bonds, the owner of the Project, New Paradigm Property Management, LLC issued a notice of default to TEC, and TEC subsequently ceased performance prior to completion. Surety then received a claim from the owner on the performance bond for completion of the Project. The original contract amount was $849,495.00.

15. Surety also received a claim against the labor and material payment bond from one of TEC's suppliers, ABC Supply Co. Inc., seeking payment for labor and materials supplied to the Project.

16. Pursuant to its obligations under the Bonds issued to TEC, Surety commenced an investigation of these claims and has denied the performance claim. To date, Surety has incurred, and will continue to incur, costs in connection with investigating and resolving the claims.  These costs include legal, accounting and consulting fees and related expenses.

17. To date, TEC has not reimbursed Surety for these payments in any amount.

18. Based upon the Surety's investigations of the Project, Surety reasonably anticipates that it will be exposed to further payment and performance bond losses.

19. By letter dated April 26, 2016, a copy of which is attached hereto as **Exhibit C**, Surety demanded that Indemnitors, pursuant to the GIA, provide cash collateral of $1,250,000.00 to Surety to cover anticipated losses on the Bonds ("Collateral Demand Letter").

20. To date, each of the Indemnitors have failed to comply with the demands as set forth in the Collateral Demand Letter or otherwise fulfill their indemnity obligations as set forth by the GIA.

/ / /

/ / /

/ / /

**FIRST CAUSE OF ACTION**

**(Breach of Contract (Indemnity Agreement))**

21.     Surety incorporates by reference Paragraphs 1 through 20 as though set forth herein in full.

22.     Due to Defendants' defaults under the GIA, Surety has incurred and will continue to incur costs, expenses, losses and attorneys' fees in connection with its issuance of the Bonds to TEC.

23.     Surety has performed all of the terms, covenants and conditions required on its part to be performed under the terms of the GIA, or has been excused from doing so by the Defendants.

24.     Despite demand, Defendants have failed and refused to, and continue to fail and to refuse to, deposit collateral in any amount with Surety and indemnify and hold Surety harmless for its losses, in breach of the express terms of the GIA.

25.     As a direct and proximate result of the breach of the GIA by Defendant, Surety has incurred losses and expenses, and will continue to incur losses and expenses in an amount according to proof, along with attorneys' fees, expenses and costs incurred in prosecuting this action.

**SECOND CAUSE OF ACTION**

**(Declaratory Relief)**

26.     Surety incorporates by reference Paragraphs 1 through 25, inclusive, as though set forth herein in full.

27.     An actual controversy has arisen and now exists between Surety and Defendants.   Surety contends that Defendants are each obligated to reimburse Surety for amounts it will incur to satisfy TEC's obligations as the principal on the Bonds.  Surety also contends that Defendants are required to deposit collateral in an amount determined by Surety sufficient to discharge any anticipated loss.

28.     Surety desires a judicial determination of the respective rights and duties of Surety and Defendants with respect to the meaning and interpretation of

1    the GIA.   In particular, Surety desires a declaration that, under the terms of the

2    GIA:   (1) Defendants are obligated to reimburse Surety for amounts Surety has

3    incurred and will continue to incur to satisfy TEC's obligations on the Bonds,

4    including attorneys' fees, costs and expenses; and (2) Defendants are obligated to

5    deposit collateral in an amount as determined by Surety sufficient to discharge any

6    loss or anticipated loss.

7    **THIRD CAUSE OF ACTION**

8    **(Quia Timet)**

9        29.    Surety incorporates by reference Paragraphs 1 through 28, inclusive,

10    as though set forth herein in full.

11       30.    Defendants are obligated under the doctrine of Quia Timet to

12    reimburse Surety for all losses and expenses that will be incurred as a consequence

13    of having issued the Bonds.

14       31.    Surety believes that, based upon Defendants' unwillingness to

15    indemnify Surety and their respective failure to deposit collateral, Defendants will

16    attempt to avoid their obligations to reimburse Surety for all losses and expenses

17    that will be incurred by Surety as a consequence of issuing the Bonds to TEC.

18       32.    Surety has no adequate remedy at law for the injuries suffered and the

19    injuries it will continue to suffer.   Surety is informed, believes and thereon alleges

20    that Defendants have exhibited a willingness to evade its obligations and may

21    transfer assets in derogation of the legal and equitable rights of Surety.   If

22    Defendants are not enjoined immediately from transferring assets, the assets may be

23    disposed of permanently, and Defendants will render themselves insolvent, thereby

24    irreparably harming Surety.

25       33.    As a proximate result of the conduct of Defendants, Surety will be

26    damaged so long as Defendants are able to evade their respective obligations to

27    Surety by transferring assets.   The full amount of this damage is not presently

28

1   known by Surety, which will amend this complaint to state this amount when the
2   same becomes known, or on proof of the damages.

3       34.     Surety is entitled to receive a temporary restraining order, a
4   preliminary injunction and a permanent injunction, all enjoining the Defendants, as
5   well as any and all of their respective agents, servants, assignees, employees,
6   officers, and all persons or entities acting thereunder, in concert with, or for
7   Defendants, from transferring any assets absent further court order.

8                            **FOURTH CAUSE OF ACTION**
9                              **(Specific Performance)**

10      35.     Surety incorporates by reference Paragraphs 1 through 34, inclusive, as
11  though set forth herein in full.

12      36.     Surety issued the Bonds on behalf of TEC at the request of
13  Indemnitors.

14      37.     Surety will incur losses and expenses by virtue of and as a direct
15  consequence of the issuance of the Bonds and in satisfying TEC's obligations under
16  the Bonds.

17      38.     Surety is entitled to judgment compelling Defendants to specifically
18  perform pursuant to the terms of the GIA by: (1) indemnifying Surety for all losses,
19  expenses, costs and fees incurred, in connection with its issuance of the Bonds to
20  TEC; and (2) depositing collateral with Surety in an amount as determined by
21  Surety sufficient to discharge any anticipated loss. See Safeco Ins. Co. of America
22  v. Schwab, 739 F.2d 431 (9th Cir. 1984).

23      39.     Surety's remedy at law is inadequate, in that Surety is exposed to
24  liability that is not liquidated at this time.

25  / / /
26  / / /
27  / / /
28  / / /

## **PRAYER FOR RELIEF**

WHEREFORE, Surety prays for judgment as follows:

ON THE FIRST CAUSE OF ACTION:

1.    For all damages proximately caused by Defendants' breach of the GIA;

2.    For interest thereon at the maximum legal rate;

3.    For an award of attorneys' fees expended to prosecute this action;

4.    For costs of suit herein; and

5.    For such other and further relief deemed necessary and proper by the Court.

ON THE SECOND CAUSE OF ACTION:

1.    A judicial declaration that Defendants are jointly and severally obligated to reimburse Surety for amounts Surety will incur, with interest thereon pursuant to the terms of the GIA, to satisfy TEC's obligations as the principal on the Bonds;

2.    A judicial declaration that, under the terms of the GIA, Defendants are obligated to: (1) reimburse Surety for amounts Surety has incurred and will continue to incur, with interest thereon, to satisfy TEC's obligations as the principal on the Bonds; and (2) deposit collateral in an amount as determined by Surety to be sufficient to discharge any loss or anticipated loss;

3.    For costs of suit herein; and

4.    For such other and further relief deemed necessary and proper by the Court.

ON THE THIRD CAUSE OF ACTION:

1.    A temporary restraining order, preliminary and permanent injunction enjoining Defendants, their respective agents, servants, employees, officers and assigns, and each of them, from transferring any assets absent further court order;

2.    For costs of suit herein; and

1   3.      For such other and further relief deemed necessary and proper by the

2   Court.

3   ON THE FOURTH CAUSE OF ACTION:

4   1.      For an order compelling Defendants to comply with the terms of the

5   GIA by: (1) reimbursing Surety for amounts Surety will incur to satisfy TEC's

6   obligations as the principal on the Bonds; and (2) depositing collateral in an amount

7   as determined by Surety, sufficient to discharge any anticipated loss.

8   2.      For all damages proximately caused by Defendants' respective

9   breaches of the GIA;

10   3.      For interest thereon at the legal rate;

11   4.      For reasonable attorneys' fees and costs incurred herein, according to

12   proof;

13   5.      For costs of suit herein; and

14   6.      For such other and further relief as the Court may deem necessary and

15   proper.

16

17   Dated: May 20, 2016                    Watt, Tieder, Hoffar & Fitzgerald, L.L.P.

18

19                                          By: /s/Amanda L. Marutzky
20                                              Robert C. Niesley
                                                Amanda L. Marutzky
21                                              Attorneys for Plaintiffs
                                                ALLIED WORLD INSURANCE
22                                              COMPANY

23

24

25

26

27

28

10336558.1 103902.00002                    10                              **COMPLAINT**

EXHIBIT "A"

# ALLIED WORLD INSURANCE COMPANY
30 S. 17th St., 16th Floor, Philadelphia, PA 19103

## AGREEMENT OF INDEMNITY

**THIS AGREEMENT OF INDEMNITY** (this "*Agreement*"), is made and entered into on this

21st day of December , 2015 by and among the following entities and individuals, to wit:

| Principal(s) | Address(es) |
|---|---|
| TEC Construction Services, Inc. | 4200 Rocklin Rd, Suite 1, Rocklin, CA 95765 |

Including any Parent companies, affiliate or subsidiary whether present or future, or directly or indirectly held (all such persons, affiliates and subsidiaries being referred to collectively herein as "*Principal*") and the following entities and individuals, each intending to be jointly and severally bound hereunder, to wit

| Indemnitor(s) | Address(es) |
|---|---|
| TEC Construction Services, Inc. | 4200 Rocklin Rd, Suite 1, Rocklin, CA 95765 |
| The Eternity Challenge, Inc. | 4200 Rocklin Rd, Suite 1, Rocklin, CA 95765 |
| Merlyn F. Lund | 1290 Peak View Ct, Lincoln, CA 95648 |
| Nancy T. Lund | 1290 Peak View Ct, Lincoln, CA 95648 |

1

MFL___NTL___RB

Including any Parent companies, affiliate or subsidiary whether present or future, or directly or indirectly held of any of the foregoing (all such persons, affiliates and subsidiaries being referred to collectively herein, together with Principal, as "*Indemnitors*"), and

Allied World Assurance Company (U.S.), Allied World Insurance Company, Allied World Assurance Company and Darwin National Assurance Company, together with its affiliated insurers and with each other subsidiary, affiliate, successor and assign of any of said insurance companies, which also includes reinsurers, co-sureties, fronting sureties (which are referred to collectively herein as "*Surety*")

## W I T N E S S E T H

WHEREAS, in performing certain contracts and fulfilling related obligations, Principal may be required to obtain surety bonds, or similar undertakings or instruments of guarantee, and to renew, continue or substitute from time to time the same, or to obtain new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions (any one or more of which bonds, undertakings or instruments are hereinafter called a "*Bond*"), and

WHEREAS, acting upon the request of Principal and Indemnitor and in reliance upon the understanding that this Agreement be executed and the obligations hereunder be performed, Surety has agreed to execute Bonds or to cause Bonds to be executed and, in the same reliance, it may in the future execute or cause to be executed, one or more other Bonds on behalf of Principal; and

WHEREAS, Indemnitors have a direct, substantial, material and beneficial interest in obtaining the Bonds and in keeping the Bonds outstanding and in Surety's refraining from canceling said Bonds

NOW THEREFORE, in consideration of these premises, Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with Surety as follows:

### I. Certain Definitions

"*Change of Control*" means any series of events by which (a) a person or group becomes or has the unconditional right to become the direct or indirect owner, directly or indirectly of 25% or more of the voting power of the voting stock of any Indemnitor, or (b) an Indemnitor consolidates with or merges into another entity or organization, or transfers by any means all or substantially all of its assets to another entity or organization or (c) during any period of twelve consecutive months, individuals who, at the beginning of such period, constituted the board of directors of an Indemnitor (together with any new director voted to the Indemnitor's board by vote of a majority of the directors then in office who either were directors at the beginning of such period) cease for any reason to constitute at least a majority of the board of directors of such Indemnitor.

"*Claim*" means any claim, notice of default, notice of termination, demand for payment, suit, or any other form of notice or claim or demand that Surety receives in connection with any Bond.

"*Due Date*" will mean the fifth business day after the receipt date of a written demand from the Surety, unless otherwise specified in this Agreement.

"*Interest*" means interest at the rate of four percent (4%) per annum above the Wall Street Journal prime rate, as published on the Due Date, or the greatest amount allowed by law.

"*Lien*" means any mortgage, pledge, assignment, encumbrance, or other security agreement or preferential arrangement of any kind or nature whatsoever.

"*Loss*" means the underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees (including all legal fees and disbursements), interest and expenses of every nature (including premium and fees due-but-unpaid for the issuance and continuance of the Bonds) which Surety sustains or incurs or becomes liable for by reason of (a) being requested to execute or procure the execution of any Bond; or (b) having executed or procured the execution of any Bond; or (c) the administration of any amendment, waiver or supplement to any Bond; or (d) any Indemnitor's failure to perform or comply with any of the covenants and conditions of this Agreement; or (e) enforcement of, attempted enforcement of, or preservation of rights under any Bond or this Agreement.

### II. Representations and Warranties

Indemnitor(s) and each of them hereby represent and warrant to Surety as follows:

2

 

2.1 No information, exhibit or report furnished by any Indemnitor to Surety in connection with the negotiation of, or compliance with this Agreement or in connection with any Bond, contains or will contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading.

III.    **Indemnitor Covenants**

Each Indemnitor hereby agrees and covenants with Surety as follows:

3.1    PREMIUMS – to pay Surety, when due or otherwise promptly upon Surety's demand, all of the premiums, costs and charges for Bonds requested from and/or issued by Surety in accordance with its rate filings, its manual of rates, or as otherwise agreed upon; and where such premium costs and charges are annual, to continue to pay them at the then applicable rate (as such rate is set forth by Surety) until Indemnitors or Principal will deliver evidence satisfactory to Surety of its discharge or release from Bonds and all liability by reason thereof.

3.2    INDEMNITY – at all times jointly and severally to exonerate, indemnify and keep indemnified, and to defend and to hold Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not Surety has actually made any payment thereon as of such Due Date.

Principal's and Indemnitors' joint and several obligations to exonerate, indemnify, and keep indemnified, and to defend and hold harmless Surety from any and all liability for any and all Loss includes but is not limited to: liability, loss, costs, damage and expense of whatsoever kind or nature (including but not limited to interest, court costs, attorney fees, investigation fees, consulting fees, accounting fees, and other professional or trade fees whether incurred on a flat fee, percentage, time and material, hourly or other basis, and includes the cost of Surety's in-house professionals). Surety shall at all times has the right, but not the obligation, to retain counsel of its choice to defend itself from any claim, lien, levy, liability, suit or judgment brought against Surety on any Bond or against any collateral held by Surety, contract funds, trust funds or liens held by Surety. The costs associated with Surety retaining such counsel shall be included within Indemnitors obligation to exonerate, indemnify, and hold Surety harmless.

3.3    DEPOSIT OF FUNDS – (a) to deposit with Surety upon demand as collateral, by the Due Date and after receipt of Surety's written demand an amount determined solely by Surety to exonerate Surety from Loss and to cover its exposure and/or liability for Loss covered by Section 3.2, as determined solely by Surety. At Surety's sole option, such collateral will be in addition to and not in lieu of any other collateral previously provided to Surety. In addition, if an Event of Default (as defined in this Agreement below) has occurred, Surety will be entitled to demand that Indemnitors place with Surety funds equal to the aggregate penal sum of all then-outstanding Bonds, or such sum as determined by Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds).

(b) If Indemnitors fail to pay in full the amount demanded pursuant to this Agreement on the Due Date, Indemnitors will pay Interest on such overdue amount from the Due Date up to the date of actual payment to Surety.

(c) Surety will have the right to use the collateral, or any part thereof, in payment or settlement of any liability, Loss or expense for which Indemnitors are or would be obligated to indemnify Surety under the terms of this Agreement. Indemnitors will be entitled to the refund of any unused portion of the deposit upon termination of the liability of Surety on all Bonds and the termination of Indemnitors' performance of all obligations to Surety under the terms of this Agreement.

(d) Indemnitors acknowledge that the failure to deposit with Surety, by the Due Date, the sum demanded by Surety as collateral security will cause Surety irreparable harm for which Surety has no adequate remedy at law. Indemnitors agree that Surety will be entitled to injunctive relief for specific performance of Indemnitors' obligation to deposit with Surety the sum demanded as collateral security and hereby waive any claims or defenses to the contrary and the posting of any bonds by Surety in connection therewith

(e) Surety shall have no duty to invest, or provide interest specific to any funds pledged by Principal or Indemnitors.

3.4    NEGATIVE PLEDGE —to not create, incur, or suffer to exist any Lien, in of, or on any Indemnitors' or Principal's property except as where Surety has provided prior written consent, such consent shall not be unreasonably withheld.

3.5    CHANGE OF CONTROL – to not permit any Change of Control to occur without Surety's prior written consent, such consent not to be unreasonably withheld or denied.

3

**EXHIBIT A PAGE 3**

MFL___ NTL___RB

3.6    REPORTING/RIGHT TO INFORMATION – to maintain a system of accounting established and administered in accordance with United States generally accepted accounting principles ("GAAP") and until such time as the potential liability of Surety under any Bond or Bonds is terminated, the Indemnitors and its subsidiaries will promptly furnish to Surety such information as Surety may request from time to time, and Surety will have the right to examine and copy the books, records and accounts of Indemnitors, whether kept in hard copy or electronic format or any combination thereof. Indemnitors also expressly authorize Surety to access its/his/her/their commercial and personal consumer credit records/profiles (including from TransUnion, Experian, and Equifax) at any time for any reasonable business purpose, including but not limited to, account numbers and account balances from any and all financial institutions, banks, depositories, accountants, creditors, or other persons or firms.

Further, Indemnitors will furnish to Surety:

3.6.1    Within 10 days of such event, (i) notice of any modification, change, amendment or termination of any credit facility agreements, (ii) notice of any technical or other default under any credit facility agreements as soon as possible and within 10 days of the occurrence thereof, whether or not such default has been waived or cured, (iii) notice of delivery of any certificate or notice required to be delivered by any Indemnitor to lenders or agents under any credit facility agreements to which any Indemnitor is party;

3.6.2    As soon as possible and within 10 days after Indemnitors' receipt thereof, a copy of (i) any notice or claim to the effect that Indemnitors or any of its subsidiaries is or may be liable to any person as a result of the release by Indemnitors, any of its subsidiaries or any other Person of any toxic or hazardous waste or substance into the environment, and (ii) any notice alleging any violation of any federal, state or local environmental, health or safety law or regulation by Indemnitors or any of its subsidiaries; and

3.6.3    Upon becoming aware of any demand, notice or proceeding which may result in liability to Surety under any Bond, Principal and Indemnitors will provide notice promptly thereof. Such notices will include, but are not limited to vendor non-payment notices, Notices of Intent to default, default notices, Notices to Cure, termination notices, termination letters, bank notices, and environmental notices of default. Indemnitors further authorize any bank, depository, creditor, Obligee of a Bond, subcontractor, materials supplier or other person, firm or corporation possessing records or having information concerning the financial affairs and operations of Indemnitors to furnish to Surety and its representatives or consultants any such records or information requested by Surety. The obligations of Principal's and Indemnitors' obligations to furnish the aforementioned information shall be continuing. Surety may, but shall not be obligated to, demand compliance with these reporting requirements at any time.

3.6.4.    Principal and Indemnitors hereby authorize Surety to furnish any information and/or documents to any other persons, firms, corporation or entities for the following purposes: (a) to fulfill Surety's government and insurance reporting requirements under any applicable laws, rules and regulations, or to provide information to insurance industry associates and/or rating services; (b) to procure or attempt to procure co-suretyship or reinsurance; or (c) to avoid or defend against any Loss or to prosecute any rights as outlined in this Agreement.

3.7    COOPERATION WITH INVESTIGATION – to promptly, upon receipt of a notice from Surety regarding Surety's investigation of a Claim, or upon receipt of a request for additional information from Surety regarding any Claim, provide Surety with access to full, complete, accurate and up to date information regarding Indemnitor's position regarding the validity or defenses to the Claim. If Indemnitors' attorney possesses information concerning the Claim, Indemnitors will instruct its attorney to cooperate with Surety and Indemnitors will provide Surety with access to said attorney and information.

3.8    TRUST FUND –to hold as a trust fund and/or as a constructive or equitable trust, all interest, title and rights in any contract or undertaking referred to in any Bond, or in, or arising in any manner out of, any Bond, including but not limited to payments for or on account of any contract, in which Surety has an interest, which will inure to Surety's benefit for any liability for Loss it may have or sustain under any Bond; and, further, it is expressly declared that all monies due or to become due under any contract covered by any Bond are trust funds, whether in Indemnitors' possession or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract for which Surety would be liable under any Bond; said trust also inures to Surety's benefit for any liability or Loss it may have or sustain under any Bond or under this Agreement, and this Agreement constitutes notice of such trust. Principal and Indemnitors hereby each agree, in both their individual and corporate capacities, to be fiduciaries with respect to the trust funds mentioned herein.

Upon demand of Surety, Indemnitors shall cause all funds or proceeds from bonded projects received, or to be received in the future, to be deposited into separate trust accounts with a bank or similar depository designated solely by Surety, and such accounts shall be controlled by an escrow agent or disbursing servicer to be designated solely by Surety. All funds so deposited shall be trust funds for Surety's benefit. Indemnitors shall be liable for the costs of establishing said accounts and for any fee(s) charged by the escrow agent or disbursing servicer over the lifetime of the bonded project(s).

This provision, as well as all provisions of this Agreement, shall not be construed as to create liability of Surety to any third parties claiming to be beneficiaries.

4

3.9   SURETYSHIP COVERED – Each Indemnitor expressly recognizes and covenants that this Agreement is a continuing obligation and that it will continue to apply to and indemnify Surety as to any and all Bonds (whether or not covered by any application signed by an applicant with such application to be considered merely supplemental to this Agreement) heretofore or hereafter executed or caused to be executed by Surety on behalf of such applicant until this Agreement will be canceled in the manner hereinafter provided.

IV.   Settlements, Use of Collateral and Payment

4.1   SETTLEMENTS -   Surety shall have the full and exclusive right, in its name and in the name of Principal and all Indemnitors, but not the obligation, to prosecute, compromise, release or otherwise resolve any claim(s), causes of action or other rights assigned to Surety in Section V. below, upon which terms as Surety, in its sole discretion, shall deem appropriate. Surety shall have the exclusive right in its name or in the name of Principal and all Indemnitors to adjust, settle, or compromise any Claim, counterclaim, demand, suit or judgment involving any Bond or to take whatever other action it may deem necessary, expedient, or appropriate. Surety's decision with respect to all subject matters related to this Section, shall be binding on Principal and all Indemnitors. Surety shall have the right, but not the obligation, to provide prior notice of any Settlement to Principal and Indemnitors.

4.2   USE OF COLLATERAL - Upon the occurrence of an Event of Default (as defined below), Surety will have the right to use any collateral, or any part thereof, including but not limited to any letter of credit, in payment or settlement of such liabilities for which Indemnitors (or any one of them) would be obliged to indemnify Surety under the terms of this Agreement whether or not such liabilities arise out of or in connection with the Bond under which such collateral was delivered. Surety may sell any property assigned to it pursuant to this Agreement at public or private sale, with or without notice, at any time or place without incurring any liability of any kind. Surety may purchase any of the property at such sale and Indemnitors hereby waive any objection to Surety's purchase as aforesaid.

4.3   PAYMENTS - In the event of any Loss payment by Surety, Indemnitors further agree that in any accounting between Surety and Indemnitors, Surety will be entitled to charge for any and all disbursements made by it in good faith concerning the matters contemplated in this Agreement under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments Surety made will be prima facie evidence of the fact and amount of Surety's liability.

V.   Assignment, Events of Default, Advances, Attorney-in-Fact

5.1   ASSIGNMENT; COLLATERAL

5.1.1   Each Principal and Indemnitor hereby assigns, transfers, pledges, conveys and sets over to Surety, as collateral to secure every obligation under this Agreement, whether such obligation has arisen before or after the date of this Agreement (with the assignment of any contract to become effective as of the date of the Bond covering such contract), a security interest in the following, whether now owned or hereafter existing or acquired:

(a) all of Principal's and/or Indemnitors' rights, title and interest in, and arising in any manner out of, all contracts referred to in the Bonds (whether or not bonded), or in, or arising in any manner out of the Bonds;

(b) any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds including, but not limited to, all percentages retained, progress payments, deferred payments, compensation for extra work and proceeds of damage claims;

(c) all of Principal's and/or Indemnitors' rights, title and interest in and to all machinery, supplies, equipment, plant, tools and materials of every nature and description which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites. Without waiver of the foregoing, it is expressly agreed that should Surety pay the Bond claim of any material supplier, it is expressly agreed that title to all such material and inventory paid for by Surety shall immediately transfer to Surety;

(d) all proprietary systems, software and software licenses, patents, copyrights, trademarks, trade secrets, or any other intellectual property or assets of a similar nature which are employed by Principal in connection with any and all contractual work referred to in the Bonds;

5

EXHIBIT A PAGE 5

(e) all of Principal's and/or Indemnitors' rights, title and interest in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts;

(f) all actions, causes of actions, claims and demands whatsoever which Principal and/or Indemnitors may have or acquire against any obligees or bonds, design professionals, prime contractors, subcontractors, laborers or materialmen or any person furnishing or supplying labor, materials, supplies, machinery, tools, inventory or other equipment in connection with or on account of any Contract and against a surety of any obligee, subcontractor, laborer or materialmen, and all monies due or to become due to Principal on any policy of insurance relating to any claims arising out of performance of any Contract, including but not limited to, claims under builders risk, fire, employee dishonesty, workers compensation insurance policies, including premium refunds;

(g) all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property, supporting obligations, any contract rights or rights to the payment of money (including without limitation with respect to all contracts covered by the Bonds), federal and state tax returns, insurance claims and proceeds, and all general intangibles; and

(h) all products and proceeds of the foregoing.

5.1.2    The foregoing assignment is effective as of the date of this Agreement's execution and delivery as to each contract covered by Bonds executed prior to such date, although nothing herein limits Surety's right to claim under any prior assignment. As to any Bond executed and delivered on or after the date of this Agreement's execution and delivery, the assignment will be effective as of the respective Bond's effective date.

5.1.3    From time to time as circumstances so require, Surety reserves the right, in its sole discretion, to require collateral in addition to any collateral previously deposited with Surety, or as otherwise outlined in this Agreement. The amount of such additional collateral shall be designated by Surety, in its sole discretion. Principal and Indemnitors shall be obligated to provide such additional collateral immediately upon demand by Surety. Surety has the sole discretion to determine whether collateral already in its possession is adequate.

5.2    EVENTS OF DEFAULT – Surety, or any persons Surety designates, may enforce the security interests granted herein and may take, and are hereby authorized and empowered by each Principal and each Indemnitor to take, any action necessary to obtain possession of the funds, rights and property subject thereto if any of the following occur (each an "Event of Default"):

(1) receipt of any vendor non-payment notices, Notice of Intent to default, declaration of default, or termination of Principal's contract, abandonment, breach of or failure, refusal or inability to perform, any contract referred to in the Bonds or of any breach of any said Bonds;

(2) a failure by any Principal or Indemnitor, or delay, refusal, or inability to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond;

(3) any breach of an obligation set forth in Article III of this Agreement;

(4) any Indemnitor's assignment for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for any Indemnitor or its property, whether insolvent or not, or any Indemnitor's application for reorganization or arrangement under the terms of the United States Bankruptcy Code or any similar laws of any state, possession or territory of the United States, voluntarily or involuntarily;

(5) any proceeding which deprives Principal of, or interferes with, the use of any machinery, equipment, plant, tools, or material;

(6) any default under any credit facility agreement of any kind which is not waived by the lenders or any contracting party thereto;

(7) Principal's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if Principal be an individual or, if Principal is any other type of entity, any change in Principal's name, principal place of business or existence; or

(8) the failure of Principal or Indemnitors to pay any Premium(s) on any Bond(s).

6

_MFL_ _NTL_ _RB_

**EXHIBIT A PAGE 6**

5.3     TAKEOVER – if an Event of Default occurs, Surety will have the option in its sole discretion, and Principal and Indemnitors hereby authorize Surety, to take possession of any part or all of the work under any contract or contracts covered by any Bond, including, but not limited to, machinery, supplies, equipment, plant, tools and materials, wherever stored or located, without charge and at Principal's and/or Indemnitors' cost and expense, to complete or arrange completion of the same, and the Indemnitors will promptly upon demand pay to Surety all Losses, fees, costs and expenses so incurred.

5.4     ADVANCES–Surety is authorized and empowered (in its sole discretion and without any obligation to do so) to guarantee loans, to advance or lend to Principal any money for any contracts referred to in or guaranteed by the Bonds; and all money Surety expends in the completion of any such contracts, or lends or advances from time to time to Principal, or Surety guarantees for the purposes of any such contracts, and all costs, and expenses Surety incurs in relation thereto, unless repaid with legal interest by Principal to Surety when due, will be a Loss by Surety for which Principal and Indemnitors will be responsible, notwithstanding that said money or any part thereof should not be so used by Principal.

5.5     ATTORNEY-IN-FACT – Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate Surety, or any persons Surety designates, as their attorney-in-fact with the right, but not the obligation, to exercise all of Principal's and Indemnitors' rights assigned, transferred and set over to Surety in this Agreement, and in Principal's and Indemnitors' name to make, execute, and deliver any and all additional or other assignments, documents, financing statements or papers Surety deems necessary and proper to (i) vest in Surety absolute title to any and all monies, property and rights hereby assigned and (ii) provide the protection and rights to Surety contemplated by all of the provisions of this Agreement. Principal and Indemnitors hereby ratify and confirm all of Surety's acts and actions taken and done as such attorney-in-fact and agree to protect and hold Surety harmless for acts herein granted as attorney-in-fact.

### VI.     Termination

6.1     *Immediately upon receipt of Surety's written request for its release and discharge from any Bond (or Bonds), Indemnitors will use their best efforts to cause Surety to be fully and completely released and discharged from such Bond(s) and from all liability by reason of such Bond(s).*

6.2     Principal or Indemnitors may terminate this Agreement upon thirty days written notice sent by registered mail to Surety at its principal bond office at **30 S. 17th St., 16th Floor, Philadelphia, PA 19103,** but any such notice of termination will not operate to modify, bar, or discharge Principal or Indemnitors as to:

(a) Bonds that may have been theretofore executed or Losses theretofore incurred

Such notice of termination will operate only with respect to Principal or those Indemnitors upon whose behalf such notice of termination will have been given, and such termination will only be effective upon receipt by Surety. All other notices or certificates required to be delivered hereunder should also be sent to Surety.

### VII. General Provisions

7.1     WAIVER BY PRINCIPAL AND INDEMNITORS – With respect to any and all of the powers granted to Surety by this Agreement, whether in this Section or elsewhere, or by operation of law, Principal and Indemnitors hereby EXPRESSLY WAIVE any and all right to claim against Surety, including claims whether future known or unknown, suspected or unsuspected, anticipated or unanticipated, fixed or contingent, that Surety in any way damaged Principal and/or Indemnitors, or any of them, or any of their businesses by the fact that:

7.1.1     Surety failed to exercise any or all of its powers, or failed to exercise any power to the fullest extent it might have;
7.1.2     Surety's acts or omissions interfered with any contract of Principal or damaged the reputation or financial condition of any Indemnitor or his business; or
7.1.3     Surety's acts or omissions increased the liability of Principal or Indemnitors hereunder beyond what Indemnitors or any of them might consider necessary or reasonable or beyond what any of them might have intended to assume.

Principal and Indemnitors hereby ratify and approve all actions and courses of action taken by Surety or its agents in good faith under the power granted herein or otherwise and hereby RELEASE and DISCHARGE Surety and its agents from any and all liabilities.

Indemnitors further agree that they are primarily (not secondarily) liable to Surety under this Agreement. Indemnitors hereby waive and relinquish all rights and remedies which they may be accorded by applicable law to Indemnitors and agrees not to assert or take

7

MFL   NTL   RB

**EXHIBIT A PAGE 7**

advantage of any such rights or remedies, including, without limitation: (a) any defense based upon any legal incapacity, disability, discharge, or limitation of liability or other defense of Indemnitor, any other guarantor or any other person from any cause other than full payment of all obligations arising out of the Loan, or; (b) any defense based upon Surety's election of any remedy against Indemnitors or both; (c) any right to require Surety to proceed against Indemnitors or any other person or to proceed against or exhaust any remedy in Surety's power before proceeding against Indemnitors; (d) any defense based upon the modification, renewal, extension or other alteration of any of the Surety Agreements; (e) any defense based upon or arising out of any defense which any Indemnitor or other person may have to the performance of any part of the obligations herein agreed to; (f) any defense based upon Surety's failure to disclose to any Indemnitor any information Surety may now or hereafter possess concerning Indemnitors' financial condition or any other circumstances bearing on Indemnitors' ability to pay any of the obligations, regardless of whether Surety has reason to believe that any such information materially increases the risk beyond that which Indemnitors intends to assume or has reason to believe that such information is unknown to Indemnitors or has reasonable opportunity to communicate such information to Indemnitors, since Indemnitors each acknowledge that they are fully responsible for being and keeping informed of the financial condition of the Contractors and Indemnitors and of all circumstances bearing on the risk of non-payment of any Indebtedness hereby created; (g) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal; (h) any right of subrogation, any right to enforce any remedy which Surety may have against Indemnitors and any right to participate in, or benefit from, any Collateral for the obligations now or hereafter held by Surety.

In the Event of Default as defined by this Agreement: (a) Surety may collect from Indemnitors pursuant to this Agreement without first foreclosing on any of the Collateral; (b) if Surety forecloses on any Collateral: (i) the amount of the indebtedness may be reduced only by the amount for which that Collateral is liquidated, even if the Collateral is worth more than the amount received; (ii) Surety may collect from Indemnitors even if Surety, by foreclosing on the Collateral, has allegedly destroyed any right Indemnitor may have to collect from the other Indemnitors. This is an unconditional and irrevocable waiver of any rights and defenses Indemnitors may have because the Indebtedness is secured by Collateral. Indemnitors hereby waive all rights and defenses arising out of an election of remedies by Surety, even though that election of remedies may have destroyed Indemnitors' right of subrogation and reimbursement against the other Indemnitors, if any.

7.2    AMENDMENTS – This Agreement may not be changed or modified orally. No change or modification will be effective unless made by written endorsement executed by Surety to form a part hereof. The addition to this Agreement of any Indemnitor or Principal, including any entities acquired after the date of execution of this Agreement, may be effected by written amendment executed by such Indemnitor or Principal only, notwithstanding any language herein to the contrary.

7.3    CHANGES; WAIVER OF NOTICE –Surety is authorized and empowered, without notice to or knowledge of Indemnitors (any notice to Indemnitors being hereby *expressly waived*), to assent, or to refuse to assent, to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent, or to refuse to assent, to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that Indemnitors will remain bound under the terms of this Agreement even though any such assent by Surety does or might substantially increase the liability of said Indemnitors.

7.4    NO WAIVER BY SURETY; REMEDIES CUMULATIVE – No failure or delay on the part of Surety in the exercise of any power, right or privilege hereunder or under any Bond will impair such power, right or privilege or be construed to be a waiver of any default or to be acquiescence therein, and no single or partial exercise of any such power, right or privilege will preclude further exercise thereof or of any other power, right or privilege. The rights, powers and remedies given to Surety hereby are cumulative and will be in addition to and independent of all rights, powers and remedies existing by virtue of any statute or rule of law, including every right and remedy which a personal surety without compensation would have and nothing herein contained will be considered or construed to waive, abridge or diminish any right or remedy which Surety might have if this Agreement were not executed.

7.5    SET OFF – Surety shall enjoy all of its common law, equitable and statutory rights of set-off, and Principal and Indemnitors expressly agree to Surety's right of set-off. These rights shall include, but not be limited to, Surety's option to withhold for the purposes of set-off any moneys due to Principal or Indemnitors under any and all Bonds and/or Bonded contracts up to any amounts due and owing to Surety. Surety's set-off rights shall apply without limitation, including to all collateral and other property pledged to Surety. Surety shall exercise its set-off rights in the first place, with any other indebtedness second.

7.6    HOMESTEAD WAIVER – Principal and Indemnitors hereby waive all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Commonwealth, Territory, or Possession of the United States, except as provided in Section 7.10 of this Agreement.

8

7.7     COUNTERPARTS – This Agreement may be executed in any number of counterparts, all of which taken together will constitute one agreement, and any of the parties hereto may execute this Agreement by signing any such counterpart. This Agreement will be effective as to each Indemnitor when such Indemnitor has executed it and notified Surety by facsimile transmission that it has taken such action. Indemnitors hereby acknowledge that the failure of anyone of them to execute this Agreement will not in any way affect the validity or enforceability of this Agreement as to those Indemnitors who have executed the Agreement.

7.8     ENTIRE AGREEMENT –This Agreement (together with any Bonds issued by Surety on behalf of a Principal and any other documents delivered in connection herewith or therewith) constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and verbal, among the parties or any of them with respect to the subject matter hereof. This Agreement is between sophisticated parties, each of which has reviewed the Agreement and is fully knowledgeable about its terms and conditions. The parties therefore agree that this Agreement will be construed without regard to the authorship of the language and without any presumption or rule of construction in favor of either of them.

7.9     DECLINE EXECUTION – *All parties acknowledge and agree that nothing in this Agreement will be construed as an explicit or implicit commitment by Surety to execute, renew or extend any bonds to a Principal or otherwise.* Surety may, in its sole discretion, decline to execute, renew or extend any Bond and may cancel any Bond for whatever reason, in Surety's sole discretion, and Principal and Indemnitors agree to make no claim to the contrary. Without limiting the foregoing, if Surety will execute a Bid or Proposal Bond, it will retain the right to decline to execute any Bond that may be required in connection with an award that may be made under the proposal for which the Bid or Proposal Bond is given, and such declination will not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond. Indemnitors acknowledge that Surety makes no representation as to the validity or acceptability of any Bond to any person, firm or entity of whatever sort or kind under any contract, and Indemnitors agree that they will have no claim against Surety arising out of or in any manner relating to the failure or refusal of any person, firm or entity of whatever sort or kind to award any contract to Principal, or to accept any bond executed and delivered by Surety, or that Surety has been requested to execute and deliver.

7.10    INVALIDITY; SAVINGS CLAUSE – Invalidity of any provision of this Agreement by reason of the laws of any jurisdiction will not render the other provisions hereof invalid. In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity will not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing will be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. Each party agrees to execute promptly any documentation necessary to cure any such failure, defect or invalidity. It is understood and agreed by the Indemnitors that the rights, powers, and remedies given Surety under this Agreement will be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which Surety may have or acquire against Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

7.11    GOVERNING LAW; JURISDICTION -This Agreement will be governed by and construed in accordance with the laws of the State of New York without regard to conflict of laws principles. As to any legal action or proceeding related to this Agreement, Indemnitors will be subject to the jurisdiction of the federal courts, or if such courts do not have jurisdiction then the state courts, located in the Borough of Manhattan in the State of New York, and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or similar basis. Indemnitors further waive personal service.

7.12    NOTICE OF EXECUTION - Principal and Indemnitors hereby waive notice of the execution of any Bond and of the acceptance of this Agreement, and also waive notice of any change in surety credit or other fact that might materially alter Principal's and Indemnitors' obligations hereunder. Principal and Indemnitors hereby further waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, Principal and Indemnitors will be and continue to be liable hereunder, *notwithstanding* any notice of any kind to which they might have been or be entitled, and *notwithstanding* any defenses they might have been entitled to make as a result of lack of notice.

7.13    OTHER INDEMNITY - Principal and Indemnitors will continue to be bound under the terms of this Agreement even though Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of Principal and the Indemnitors, accepted, reduced or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from Principal or Indemnitors or others, it being expressly understood and agreed by Principal and Indemnitors that any and all other rights which Surety may have or acquire against Principal and Indemnitors and/or others under any such other or additional agreements of indemnity or collateral will be in addition to, and not in lieu of, the rights afforded Surety under this Agreement. No Indemnitor will make any defense to the enforcement of this Agreement based on the addition or the release of any Indemnitor. The

9

MFL        NTL        RB

security interest, assignments, trust, indemnity and other rights granted herein, will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security and rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.

7.14    SUITS —Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action will not prejudice or bar the bringing of other suits, upon other causes of action, whether theretofore or thereafter arising.

7.15    WAIVER OF JURY TRIAL – Principal and Indemnitors hereby waive and convenant that they will not assert any right to trial by jury in respect to any legal proceeding arising out of this Agreement.

7.16    CO-SURETIES – In the event Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all the terms and conditions of this Agreement will inure to the benefit of such other sureties, co-sureties and reinsuring sureties, their successors and assigns, as their interests may appear.

7.17    UNIFORM COMMERCIAL CODE – This Agreement will constitute a Security Agreement to Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by Surety without in any way abrogating, restricting or limiting the rights of Surety under this Agreement or under law, or in equity. Indemnitors will execute and deliver such other instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such jurisdictions as Surety will deem necessary or desirable. Each Indemnitor hereby authorizes Surety to make such filings, including continuation statements and amendments thereto, without the signature of such Indemnitor. At Surety's request, Indemnitors additionally agree to sign all other documents that are necessary to perfect, protect, and continue Surety's security interest in the Collateral. Indemnitors additionally agree to sign all supporting documents and other documents that are necessary to perfect, protect, and continue Surety's Lien in the Collateral. This includes, without limitation, that Indemnitors shall execute and deliver all necessary deposit control account agreements, investment account control agreements, limited liability company membership interest pledge agreements, among others reasonably necessary to perfect Surety's interests in the Collateral, and cooperate and take all necessary and reasonable steps to assure that the appropriate recipient parties on notice of Surety's Lien in the Collateral have accepted notice of the Lien and duly recorded such Lien. Indemnitors further agree to deliver all original promissory notes, vehicle title certificates, and any and all stock, membership or other equity ownership certificates as may be required to give Surety possession and/or control of the Collateral to perfect Surety's security interests.

IN WITNESS WHEREOF, the undersigned expressly recognize and covenant that this Agreement is a continuing obligation applying to and indemnifying Surety as to any and all Bonds heretofore or hereinafter executed by Surety on behalf of Principal until this Indemnity Agreement will be terminated.

## PRINCIPAL:

Corporate/Partnership Name:    TEC Construction Services, Inc.
                                                                                    (Seal)

FEIN:    46-2651930

*On behalf of all Principals (if more than one)*

BY:    *[signature]*

Name & Title    Merlyn F. Lund, President

## INDEMNITOR(S):

Corporate/Partnership Name:    TEC Construction Services, Inc.
                                                                                    (Seal)

FEIN:    46-2651930

*On behalf of all Principals (if more than one)*

BY:    *[signature]*

Name & Title    Merlyn F. Lund, President

10

EXHIBIT A  PAGE 10

## INDEMNITOR(S) cont'd:

Corporate/Partnership Name: The Eternity Challenge, Inc.

(Seal)

FEIN: 46-1170357

*On behalf of all Principals (if more than one)*

BY:

Name & Title: Robert Beaudry, CEO

Corporate/Partnership Name:

(Seal)

FEIN:

*On behalf of all Principals (if more than one)*

BY:

Name & Title:

Name of Trust (if any):

BY:

Name & Title: , trustee

BY:

Name & Title: , trustee

Individual:

Signature:

Name: Merlyn E. Lund

Social Security Number: 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

Individual:

Signature:

Name: Nancy T. Lund

Social Security Number: 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

Individual:

Signature:

Name:

Social Security Number:

11

**EXHIBIT** A **PAGE** 11

## INDEMNITOR(S) cont'd:

Individual:

Signature: _____

Name: _____

Social Security Number: _____


Individual:

Signature: _____

Name: _____

Social Security Number: _____


Individual:

Signature: _____

Name: _____

Social Security Number: _____


*This Agreement must be signed is the presence of a Notary
and the Notary's Certificate of Acknowledgement must be attached*

12

EXHIBIT _^_ PAGE 12

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California                            )
County of _Placer_____ )

On _12/21/2015_____ before me, _Lisa Kay Montano, Notary Public,_
      Date                                  Here Insert Name and Title of the Officer

personally appeared _Merlyn Lund_____
                                         Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Lisa Kay Montano_____
                      Signature of Notary Public

**LISA KAY MONTANO**
**COMM. #2112481**
Notary Public · California
Placer County
My Comm. Expires May 21, 2019

*Place Notary Seal Above*
———————————— **OPTIONAL** ————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual         ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual         ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)   Item #5907

EXHIBIT _A_ PAGE _13_

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of __Placer__                            )

On __12/21/2015__ before me, __Lisa Kay Montano, Notary Public__,
　　　　Date　　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared __Nancy Trice Nash Lind__
　　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

**LISA KAY MONTANO**
COMM. #2112481
Notary Public · California
Placer County
My Comm. Expires May 21, 2019

Signature _____
　　　　　Signature of Notary Public

_____
　　　　Place Notary Seal Above
─────────────── **OPTIONAL** ───────────────
Though this section is optional, completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)   Item #5907

**EXHIBIT A PAGE 14**

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of _Placer_____                       )
On _12/23/15_____ before me, _Lisa Kay Montano, Notary Public_,
_____Date_____              _____Here Insert Name and Title of the Officer_____
personally appeared _Robert Beaudry_____
                          _____Name(s) of Signer(s)_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                _____Signature of Notary Public_____

LISA KAY MONTANO
COMM. #2112481
Notary Public · California
Placer County
My Comm. Expires May 21, 2019

_____Place Notary Seal Above_____

———————————— **OPTIONAL** ————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____         Signer's Name: _____
☐ Corporate Officer — Title(s): _____    ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General           ☐ Partner — ☐ Limited  ☐ General
☐ Individual       ☐ Attorney in Fact        ☐ Individual       ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator  ☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____           ☐ Other: _____
Signer Is Representing: _____     Signer Is Representing: _____

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)    Item #5907

EXHIBIT _A_ PAGE _15_

EXHIBIT "B"

## PERFORMANCE BOND

**K**NOW ALL PERSONS BY THESE PRESENTS:

That ___TEC Construction Services, Inc.___ , as Principal (hereinafter called "**Contractor**"), and

Allied World Insurance Company, a corporation of the state of New Hampshire duly authorized to write bonds (hereinafter called "**Surety**"),

are held and firmly bound unto ___New Paradigm Property Management, LLC___ , as Obligee (hereinafter called "**Owner**") in the

**sum** of _Eight hundred forty nine thousand four hundred ninety five and no/cents_ U.S. Dollars (U.S. $ _849,495.00_ ) for the

payment of which sum, well and truly to be made, the Contractor and Surety bind themselves, their heirs, executors, administrators,

successors and assigns, jointly and severally, firmly by these presents.

*WHEREAS,* The Contractor has entered into a written contract dated ___November 5, 2015___ with the Owner for
___Howard Johnson Remodel, Howard Johnson Inn & Suites - 4420 Rocklin Road, Rocklin, CA 95677___

in accordance with a contract is which by reference made a part hereof, and is hereinafter referred to as the Contract.

---

*NOW, THEREFORE,* THE CONDITION OF THIS OBLIGATION is such that, if the Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect. The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly -

1.  Complete the Contract in accordance with its terms and conditions, or

2.  Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder (or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder) will arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; *but not exceeding;* including all other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

3. Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances, and EITHER: (A) After investigation, determine the amount for which it may be liable to the Owner and, as soon as practical after the amount is determined, tender payment therefor to the Owner; or (B) Deny liability in whole or in part and notify the Owner citing reasons therefor.

Any suit under this bond must be instituted before the expiration of one (1) year from the date on which final payment under the Contract falls due. If this limitation is made void by any law controlling the construction hereof, such limitation shall be deemed to be automatically amended so as to equal the minimum period of limitation permitted by such law. The Surety shall not be liable for damages, costs or expenses, including, but not limited to legal expenses from actual or alleged injury to person or property or for the death of any person, or under or by nature of any statutory or regulatory provisions for damages or compensation for actual or alleged injury to, or death, of any person or employee.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of Owner.

Signed, sealed and dated this ___December 30, 2015___ ,

Witness: _____     Principal: ___TEC Construction Services, Inc.___

Name: _____     By: _____

                                                                              Name and Title: _____

Surety: _Allied World Insurance Company_     By: 

Bond Number: _S001-2611_                              Name: ___David F. Druml___ as Attorney-In-Fact
Premium: _$25,485_

SUR 00004 00 (11/2012)

EXHIBIT _B_ PAGE _14_



**EXHIBIT** _B_ **PAGE** _17_

## LABOR & MATERIAL PAYMENT BOND

### KNOW ALL PERSONS BY THESE PRESENTS:

That __TEC Construction Services, Inc.__ , as **Principal**, and

__Allied World Insurance Company__ , as **Surety**, are held and firmly bound

unto __New Paradigm Property Management, LLC__ , as **Obligee**, in the sum

of __Eight hundred forty nine thousand four hundred ninety five and no/cents__ U.S. Dollars (U.S. $ __849,495.00__ ) for the payment of which sum, well and truly to be

made, the Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, The Principal has entered into a written contract with the Obligee for __Howard Johnson Remodel__

__Howard Johnson Inn & Suites - 4420 Rocklin Road, Rocklin, CA 95677__

in accordance with a contract which is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1.  A "claimant" is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

2.  The above named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final payment for such sum or sums as may be justly due claimant, and have execution thereon. The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

3.  No suit or action shall be commenced hereunder by any claimant:

    a)  Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: The Principal, the Obligee, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid in an envelope addressed to the Principal, Obligee or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

    b)  After the expiration of **one (1) year** following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

    c)  Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4.  The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvements, whether or not claim for the amount of such lien be presented under and against this bond.

Signed, sealed and dated this __December 30, 2015__ .

Witness: _____   Principal: __TEC Construction Services, Inc.__

Name: _____   By: _____

    Name and Title: _____

Surety: __Allied World Insurance Company__   By: _____

Bond Number: __S001-2611__   Name: __David F. Druml__ _____ as Attorney-In-Fact
Premium: __Included__

SUR 00005 00 (11/2012)

**EXHIBIT _B_ PAGE _18_**



EXHIBIT _B_ PAGE _19_



**Allied World Surety**
Division of  Allied World Insurance Company
30 S. 17ᵗʰ St., Suite 810
Philadelphia, PA 19103

## POWER OF ATTORNEY

Issue Date: October 26, 2015                    No. 28650-A1531                    Single Transaction Limit: $5,000,000

KNOW ALL MEN BY THESE PRESENTS:
Allied World Insurance Company, a New Hampshire corporation (the "Company") does hereby appoint

| NAME(s): | David Mahler | David Druml |
|---|---|---|
| FIRM: | Druml Group, Inc. 1135 Farragut Boulevard Foster City, CA 94404 | |

Its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business, and to bind the Company thereby. This Power of Attorney shall remain in full force and effect for one year from the issued date above-referenced and shall expire on close of business of the first anniversary of such Issue Date.

IN WITNESS WHEREOF,   ALLIED WORLD INSURANCE COMPANY has caused these presents to be executed by the officer named below, who is duly authorized and empowered to execute on the Company's behalf.

This 26th day of October, 2015

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ELIZABETH K. BIELLI, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 5, 2018

Title: Senior Vice President - Surety

State of Pennsylvania                                )
County of Philadelphia                            )ss.

On this 26th day of October, 2015, before me came the above-named officer of ALLIED WORLD INSURANCE COMPANY, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seals of said corporation thereto by authority of his office.

Notary
My Commission Expires: 08/05/2018

## CERTIFICATE

Excerpt of Resolution adopted by the Board of Directors of the ALLIED WORLD INSURANCE COMPANY (the "Corporation"), on December 31, 2012:

RESOLVED, that the proper officers of the Corporation, the head of the surety business line for the Corporation and their appointed designees (each an "Authorized Officer" and collectively, the "Authorized Officers") be, and each hereby is, authorized to appoint one or more Attorneys-in-Fact to represent and act for and on behalf of the Corporation in the transaction of the Company's surety business to execute (under the common seal of the Corporation, if appropriate) bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof.

RESOLVED, that in connection with the Corporation's transaction of surety business, the signatures and attestations of the Authorized Officers and the seal of the Corporation may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Corporation when so affixed with respect to any bond, undertaking, recognizance or other contract of indemnity or writing obligatory in the nature thereof.

RESOLVED, that in connection with the Corporation's transaction of surety business, the facsimile or mechanically reproduced signature of any Authorized Officer, whether made heretofore or hereafter, wherever appearing upon a copy of any Power of Attorney of the Corporation, with signatures affixed as next above noted, shall be valid and binding upon the Corporation with the same force and effect as though manually affixed.

RESOLVED, that in connection with the Corporation's transaction of surety business, any such Attorney-in-Fact delivering a secretarial or other certification that the foregoing resolutions still be in effect may insert in such certification the date thereof, said date to be not later than the date of delivery thereof by such Attorney-in-Fact.

RESOLVED, that the Authorized Officers be, and each hereby is, authorized to execute (under the common seal of the Corporation, if appropriate) make, file and deliver in the name and on behalf of the Corporation any and all consents, certificates, agreements, amendments, supplements, instruments and other documents whatsoever, and do any and all other things whatsoever in connection with the Corporation's transaction of surety business, as such Authorized Officer shall in his or her absolute discretion deem or determine appropriate and any of the foregoing resolutions, the transactions contemplated thereby and any ancillary matters thereto and/or to carry out the purposes and intent thereof, such deeming or determination to be conclusively evidenced by any such execution or the taking of any such action by such Authorized Officer.

I, **Timothy J. Curry**, Secretary of the ALLIED WORLD INSURANCE COMPANY, do hereby certify that the foregoing excerpts of Resolution adopted by the Board of Directors of this corporation, and the Power of Attorney issued pursuant thereto, are true and correct, and that both the Resolution and the Power of Attorney are in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the facsimile seal of the corporation, this 30ᵗʰ day of December, 2015.

Timothy J. Curry, Secretary

EXHIBIT B PAGE 50



EXHIBIT ___B___ PAGE 21

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                   CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )

County of ___San Mateo_____              )

On ____December 30, 2015_____ before me, __Soy Wong, Notary Public_____,
          *Date*                                    *Here Insert Name and Title of the Officer*

personally appeared ___David F. Druml_____
                                          *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> SOY WONG
> Commission # 2051554
> Notary Public - California
> San Mateo County
> My Comm. Expires Dec 12, 2017

Signature ___Soy Wong_____
                  *Signature of Notary Public*

*Place Notary Seal Above*

──────────────────── **OPTIONAL** ────────────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited  ☐ General | ☐ Partner — ☐ Limited  ☐ General |
| ☐ Individual        ☐ Attorney in Fact | ☐ Individual        ☐ Attorney in Fact |
| ☐ Trustee        ☐ Guardian or Conservator | ☐ Trustee        ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907



EXHIBIT _B_ PAGE _22_



## LABOR & MATERIAL PAYMENT BOND

KNOW ALL PERSONS BY THESE PRESENTS:

That___ TEC Construction Services, Inc. _____, as Principal, and

___ Allied World Insurance Company _____, as Surety, are held and firmly bound

unto___ New Paradigm Property Management, LLC _____, as Obligee, in the sum
Eight hundred forty nine thousand four hundred ninety five and no/cents
of _____ U.S. Dollars (U.S. $ ___849,495.00___) for the payment of which sum, well and truly to be

made, the Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, The Principal has entered into a written contract with the Obligee for   Howard Johnson Remodel
_____ Howard Johnson Inn & Suites - 4420 Rocklin Road, Rocklin, CA 95677 _____

in accordance with a contract which is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1.    A "claimant" is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

2.    The above named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final payment for such sum or sums as may be justly due claimant, and have execution thereon. The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

3.    No suit or action shall be commenced hereunder by any claimant:

a)   Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: The Principal, the Obligee, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid in an envelope addressed to the Principal, Obligee or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b)   After the expiration of one (1) year following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c)   Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4.    The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvements, whether or not claim for the amount of such lien be presented under and against this bond.

Signed, sealed and dated this ___ December 30, 2015 ___.

Witness: _____     Principal:   TEC Construction Services, Inc.

Name: _____     By: _____

                                         Name and Title: _____

Surety:   Allied World Insurance Company     By: 

                                         Name: ___David F. Druml___ ___ as Attorney-In-Fact

Bond Number: ___S001-2611___
Premium: ___Included___

SUR 00005 00 (11/2012)

EXHIBIT B PAGE 24



EXHIBIT _B_ PAGE 25



**Allied World Surety**

Division of Allied World Insurance Company
30 S. 17th St., Suite 810
Philadelphia, PA 19103

## POWER OF ATTORNEY

Issue Date: October 26, 2015          No. 28650-A1531          Single Transaction Limit: $5,000,000

**KNOW ALL MEN BY THESE PRESENTS:**
Allied World Insurance Company, a New Hampshire corporation (the "Company") does hereby appoint

| NAME(s): | David Mahler | David Druml |
|---|---|---|
| FIRM: | Druml Group, Inc. 1135 Farragut Boulevard Foster City, CA 94404 | |

Its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business, and to bind the Company thereby. This Power of Attorney shall remain in full force and effect for one year from the issued date above-referenced and shall expire on close of business of the first anniversary of such Issue Date.

IN WITNESS WHEREOF, ALLIED WORLD INSURANCE COMPANY has caused these presents to be executed by the officer named below, who is duly authorized and empowered to execute on the Company's behalf.
This 26th day of October, 2015

Title: Senior Vice President - Surety

State of Pennsylvania                    )
County of Philadelphia                   )ss.

On this 26th day of October, 2015, before me came the above-named officer of ALLIED WORLD INSURANCE COMPANY, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seals of said corporation thereto by authority of his office.

Notary
My Commission Expires: 08/05/2018

### CERTIFICATE

Excerpt of Resolution adopted by the Board of Directors of the ALLIED WORLD INSURANCE COMPANY (the "Corporation") on December 11, 2012.

RESOLVED, that the proper officers of the Corporation, the head of the surety business line for the Corporation and their appointed designees (each an "Authorized Officer") be, and each hereby is, authorized to appoint one or more Attorneys-in-Fact to represent and act for and on behalf of the Corporation in the execution of the Company's surety business to execute (under the common seal of the Corporation, if appropriate) bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof;

RESOLVED, that in connection with the Corporation's transaction of surety business, the signatures and attestations of the Authorized Officers and the seal of the Corporation may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Corporation when so affixed with respect to any bond, undertaking, recognizance or other contract of indemnity or writing obligatory in the nature hereof;

RESOLVED, that, in connection with the Corporation's transaction of surety business, the facsimile or mechanically reproduced signature of any Authorized Officer, whether made heretofore or hereafter, wherever appearing upon a copy of any Power of Attorney of the Corporation, with signatures affixed as noted above, shall be valid and binding upon the Corporation with the same force and effect as though manually affixed.

RESOLVED, that in connection with the Corporation's transaction of surety business, any such Attorney-in-Fact delivering a certified or other copy in any that the foregoing resolutions are in effect may insert in such certification the date thereof, said date to be not later than the date of delivery thereof by such Attorney-in-Fact.

RESOLVED, that the Authorized Officers be, and each hereby is, authorized to execute (under the common seal of the Corporation, if appropriate) and to file and deliver in the name and on behalf of the Corporation any and all contracts, certificates, agreements, amendments, supplements, instruments and other documents whatsoever, and to any and all other filings whatsoever in connection with the Corporation's transaction of surety business, as such Authorized Officer shall in his or her absolute discretion deem or determine appropriate and any of the foregoing resolutions, and the transactions contemplated thereby and any ancillary matters thereto and/or to carry out the purposes and effect thereof, such deeming or determination to be conclusively evidenced by any such execution or the taking of any such action by such Authorized Officer.

I, Timothy J. Curry, Secretary of the ALLIED WORLD INSURANCE COMPANY, do hereby certify that the foregoing excerpts of Resolution adopted by the Board of Directors of this corporation, and the Power of Attorney issued pursuant thereto, are true and correct, and that both the Resolution and the Power of Attorney are in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the facsimile seal of the corporation, this 30th day of December, 2015.

Timothy J. Curry, Secretary

SUR 00046 00(3/2013)





**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          }
County of ___San Mateo___    }

On ___December 30, 2015___ before me, ___Soy Wong, Notary Public___
       *Date*                                    *Here Insert Name and Title of the Officer*

personally appeared ___David F. Druml___
                                 *Name(s) of Signer(s)*

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**SOY WONG**
Commission # 2051554
Notary Public - California
San Mateo County
My Comm. Expires Dec 12, 2017

Signature _____
                    *Signature of Notary Public*

*Place Notary Seal Above*

──────────────── **OPTIONAL** ────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____     Document Date: _____
Number of Pages: _____     Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____                 Signer's Name: _____
☐ Corporate Officer — Title(s): _____        ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General               ☐ Partner — ☐ Limited  ☐ General
☐ Individual        ☐ Attorney in Fact          ☐ Individual        ☐ Attorney in Fact
☐ Trustee           ☐ Guardian or Conservator   ☐ Trustee           ☐ Guardian or Conservator
☐ Other: _____                        ☐ Other: _____
Signer Is Representing: _____          Signer Is Representing: _____

---

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907



EXHIBIT B PAGE 38

EXHIBIT "C"



April 26, 2016

*VIA ELECTRONIC AND CERTIFIED MAIL*

TEC Construction Services, Inc.            The Eternity Challenge, Inc
4200 Rocklin Road                          4200 Rocklin Road
Suite 1                                    Suite 1
Rocklin, CA 95765                          Rocklin, CA 95765


Merlyn E. Lund                             Nancy L. Lund
1290 Peak View Court                       1290 Peak View Court
Lincoln, CA 95648                          Lincoln, CA 95648

Re:    **DEMAND FOR COLLATERAL**
       **Principal: TEC CONSTRUCTION SERVICES, INC.**

Mr. and Mrs. Lund:

As you know one or more affiliates of Allied World Insurance Company ("Allied World") is the surety on various bonds issued on behalf of the above named principal TEC Construction Services, Inc. ("Principal"). Each of you signed an Agreement of Indemnity in which you each agreed, among other things, to jointly and individually indemnify and hold Allied World harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by Allied World of any bond on behalf of the Principal. Each of you also agreed that all job funds received by the Principal from bonded jobs were trust funds to be used first for paying suppliers of labor and material on the bonded job before being used for any other purpose. Allied World will vigorously pursue these trust funds if they have been diverted, including challenging any attempt by improper recipients of the trust funds to discharge their debts in bankruptcy.

Allied World currently faces losses estimated at over **$849,495.00** as set forth in our prior claim notices to the Principal. Allied World previously corresponded with you on April 12, 2016, enumerating several request for documents, none of which have been supplied to date.

Allied World now makes demand upon each of you jointly, severally and in the alternative, collateral security in the amount of **$1,250,000.00** (the "Collateral Security") in cash or certified funds. This demand is made pursuant to the terms of the Agreement of Indemnity each of you signed and includes anticipated losses on the Project as well as expenses and costs associated with Principal's failures. Allied World will seek a judgment against each of you for

ALLIED WORLD

EXHIBIT C PAGE 29

TEC Construction Services, Inc.
April 26, 2016
Page 2 of 2

the full amount unless we receive the Collateral Security in full by the close of business on May 13, 2016.

Nothing herein shall be deemed to be an estoppel, waiver or modification of any of Allied World's rights or defenses and Surety hereby reserves all of its rights and defenses under any Agreement of Indemnity, contracts, agreements, bonds, or applicable law. Allied World reserves the right under the Agreement of Indemnity to make further demands on you for money as its losses accrue or its reserves are increased.

Should you have any questions, please call me. We look forward to receiving your prompt attention to this matter.

Sincerely,

JAMES A. KEATING, ESQ.
Assistant Vice President   Surety Claims

JAK/
Enclosure
CC:    R. Niesley, Esq., Attorney for Allied World - via email only
       D. Bieda, construction consultant for Allied World   via email only
       Laurie Zmrzel, Esq., attorney for TEC Construction Services, Inc. only   via email only

**EXHIBIT _C_ PAGE 30**